**FILED**

2020 Mar-20  PM 02:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

# UNITED STATES DISTRICT COURT

for the

Northern District of Alabama

2020 MAR 20  A 11:42

Western Division

| | |
|---|---|
| **GRANT SUNNY IRIELE, as the personal representative of the Estate of ROSEMARY EWERE IRIELE (also known as ROSEMARY OFUME),** )<br>)<br>)<br>) | Case No. 7:20-CV-383-LSC<br>*(to be filled in by the Clerk's Office)* |
| —————————————————— )<br>*Plaintiff(s)* )<br>*(Write the full name of each plaintiff who is filing this complaint.* )<br>*If the names of all the plaintiffs cannot fit in the space above,* )<br>*please write "see attached" in the space and attach an additional* )<br>*page with the full list of names.)* )<br>-v- ) | Jury Trial: *(check one)* ☑ Yes ☐ No |
| )<br>)<br>**SEE ATTACHED,** )<br>)<br>)<br>—————————————————— )<br>*Defendant(s)* )<br>*(Write the full name of each defendant who is being sued. If the* )<br>*names of all the defendants cannot fit in the space above, please* )<br>*write "see attached" in the space and attach an additional page* )<br>*with the full list of names. Do not include addresses here.)* ) | |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

### (Non-Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

## I.   The Parties to This Complaint

### A.   The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | GRANT SUNNY IRIELE |
| Address | 715 E 32ND ST (APT 2C) |
| | BROOKLYN    NY    11210 |
| | *City*    *State*    *Zip Code* |
| County | KINGS |
| Telephone Number | (917) 513-7549 |
| E-Mail Address | grant.s.iriele@gmail.com |

### B.   The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | SEE ATTACHED |
| Job or Title *(if known)* | |
| Address | |
| | *City*    *State*    *Zip Code* |
| County | |
| Telephone Number | |
| E-Mail Address *(if known)* | |

☐ Individual capacity     ☐ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | SEE ATTACHED |
| Job or Title *(if known)* | |
| Address | |
| | *City*    *State*    *Zip Code* |
| County | |
| Telephone Number | |
| E-Mail Address *(if known)* | |

☐ Individual capacity     ☐ Official capacity

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

Defendant No. 3

Name      **SEE ATTACHED**

Job or Title *(if known)*

Address

|  | City | State | Zip Code |
|---|---|---|---|

County

Telephone Number

E-Mail Address *(if known)*

☐ Individual capacity     ☐ Official capacity

Defendant No. 4

Name      **SEE ATTACHED**

Job or Title *(if known)*

Address

|  | City | State | Zip Code |
|---|---|---|---|

County

Telephone Number

E-Mail Address *(if known)*

☐ Individual capacity     ☐ Official capacity

## II.   Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

☑ Federal officials (a *Bivens* claim)

☐ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

A prison staff's deliberate indifference to the serious medical needs of prisoners is "cruel and unusual punishment" forbidden by the Eighth Amendment. The pain, suffering, emotional distress, and wrongful death inflicted upon Rosemary Ewere Iriele, as well as the subsequent attempt at covering it up, was a callous violation of her Eighth Amendment rights.

D.  Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

## III.  Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.  Where did the events giving rise to your claim(s) occur?

FCI Aliceville
Aliceville, Alabama

B.  What date and approximate time did the events giving rise to your claim(s) occur?

From on or about March 7th 2018 up to and including March 21st 2018

C.  What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

SEE ATTACHED



## IV.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

SEE ATTACHED

## V.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

1) That Plaintiff be awarded such compensatory damages as a jury shall determine from the evidence Plaintiff is entitled to recover;

2) That Plaintiff be awarded against the individual defendants such punitive damages as a jury shall determine from the evidence Plaintiff is entitled to recover;

3) That Plaintiff be awarded prejudgment and postjudgment interest at the highest rates allowed by law;

4) That Plaintiff be awarded the costs of this action, reasonable attorney's fees, and reasonable expert witness fees;

5) That Plaintiff be awarded appropriate declaratory and injunctive relief to put in place measures to ensure, to the best of the Court's ability, that no other inmate at FCI Aliceville is treated in such a manner as Mrs. Iriele was treated and to ensure that proper procedures and safeguards are put in place to ensure that inmates at FCI Aliceville get appropriate medical treatment; and

6) That Plaintiff be awarded such other and further relief to which plaintiff is justly entitled.

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    19 · Mar · 2020

Signature of Plaintiff

Printed Name of Plaintiff        Grant Sunny Iriele

### B.    For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Address

|  | City | State | Zip Code |
|--|------|-------|----------|

Telephone Number
E-mail Address

**BIVENS CLAIM ATTACHMENT - ROSEMARY EWERE IRIELE**

UNITED STATES DISTRICT COURT
for the
Northern District of Alabama
Western Division

Bivens Claim Attachment - Rosemary Ewere Iriele

## Introduction

This lawsuit is being brought forth to seek justice for the Defendants'
callous and deliberate indifference to the serious medical needs of Rosemary
Ewere Iriele, an African-American, beloved wife, and mother of three, who was
incarcerated awaiting appeal at Aliceville FCI, Alabama, and for her barbaric,
wrongful and easily avoidable death, following and accompanied by extreme and
unbearable pain, suffering, and emotional distress at the hands of the Defendants

This action seeks compensatory and punitive damages against the individual
Defendants for the death of Rosemary Iriele and for the callous and barbaric way
they treated her in the days leading up to her death. Nothing can fill the void her
senseless death has left for her husband, her children and so many others who so
deeply loved her, but Plaintiff hopes this lawsuit will bring some measure of justice
for Mrs Iriele and her family and will help prevent this kind of thing from
happening again to another innocent victim.

Rosemary Iriele's life was so cruelly and senselessly taken by the
Defendants' callous actions and by their failure to act in a manner that is consistent
with fundamental principles of human decency and, more importantly, with Mrs.
Iriele's constitutional rights.

1

**BIVENS CLAIM ATTACHMENT - ROSEMARY EWERE IRIELE**

## Nature of Action

This is a civil action brought by Grant Iriele, whose mother and decedent, Rosemary Ewere Iriele, was denied her fundamental constitutional rights by Defendants while incarcerated in FCI Aliceville Prison from the night of March 7, 2018 until her tragic, senseless, and avoidable death on March 21, 2018. Specifically, all Defendants were deliberately indifferent to Rosemary Iriele's serious medical needs in violation of her rights as a detainee under the Eighth Amendment to the United States Constitution.

## FTCA

An FTCA notice of claim has been sent to the BOP regional office and is currently working its way through the administrative process.

## Parties

Plaintiff Grant Iriele is an adult resident citizen of Kings County, New York. He is the unanimously selected Executor and Personal Representative for the Estate of Mrs. Rosemary Ewere Iriele (decedent) as well as her eldest child.

Defendant Richard Carroll Griffin was a GS-15 Medical Officer, according to Federal Pay[1], at all relevant times. As a G-51 Medical Officer he was an acting doctor and had a supervisory role inside Aliceville FCI. Many of Rosemary's medical encounters were reviewed or consigned by the Defendant. He is liable to the Plaintiff for his conduct in this case based on his direct actions and failure to act, notwithstanding the duty to do so, and based on his supervisory role and

---

[1] Federal Pay coalates federal employee information form OPM and other publically provided datasets https://www.federalpay.org/

responsibility. Litigation is brought forth against him in his individual capacity only.

Defendant Patricia V. Bradley was a Correctional Institution Administrator, according to "Federal Pay" at all relevant times. She is liable to the Plaintiff for her conduct in this case based on her direct actions and failure to act, notwithstanding the duty to do so, and based on her supervisory role and responsibility. Litigation is brought forth against her in her individual capacity only.

Defendant Elizabeth A. Knopp was a nurse at FCI Aliceville Prison, according to "Federal Pay, at all relevant times. She is liable to the Plaintiff for her conduct in this case based on her direct actions and failure to act, notwithstanding the duty to do so, and based on her role and responsibility. Litigation is brought forth against her in her individual capacity only.

Defendant Christopher P. Potter was a Health Aid and Technician at FCI Aliceville Prison, according to "Federal Pay, at all relevant times. Notably he is not a registered nurse in the state of Alabama. He is liable to the Plaintiff for his conduct in this case based on his direct actions and failure to act, notwithstanding the duty to do so, and based on his responsibility. Litigation is brought forth against him in his individual capacity only.

Defendant Jason S. Etheridge was a nurse at FCI Aliceville Prison, according to "Federal Pay, at all relevant times. He is liable to the Plaintiff for his conduct in this case based on his direct actions and failure to act, notwithstanding the duty to do so, and based on his supervisory role and responsibility. Litigation is brought forth against him in his individual capacity only.

Defendant "Unnamed Officer 1 Jones", full name unknown, was a correctional officer employed at FCI Aliceville Prison at all relevant times. Litigation is brought forth against them in their individual capacity only.

**3**

**BIVENS CLAIM ATTACHMENT - ROSEMARY EWERE IRIELE**

Defendant "Unnamed Officer 2", full name unknown, was a correctional officer employed at FCI Aliceville Prison. It is likely that they are also officer Jones, but this is not explicitly known. Litigation is brought forth against them in their individual capacity only.

**Facts**

At the time of Rosemary's intake on or around August 20th 2017 she had already been given the TST[2] at Robert A. Deyton Detention Facility (herein referring to as "Lovejoy" ) on July 21st 2017, which she tested positive for.

On August 24th Rosemary was again given a TST at FCI Aliceville. Nurse Nikki RN evaluated results of the test as negative, seemingly 3 days after the cutoff time evaluating results. It's worth noting here that the TST only tests if you have ever been exposed to Tuberculosis, it does not confirm if you have it so it's nearly impossible to test negative after a positive test.

Given that Rosemary was both given the BCG vaccine as a child and was born outside of the United states she should have been subject to a 2-step test. Despite knowing this, Nurse Nikki never ordered anything.

Rosemary transferred out of Aliceville back to Lovejoy for on or around September, 2018. At Lovejoy, she was given a chest x-ray for TB that came up negative.

On March 7th 2018, Rosemary was transferred back to Aliceville in fair health.

---

[2] TST refers to the Tuberculin Skin Test

**4**

**BIVENS CLAIM ATTACHMENT - ROSEMARY EWERE IRIELE**

On March 8th 2018, Nurse Jason Scott Etheridge tried to give yet another TST to Rosemary. Rosemary vocally objected to being administered this test on the grounds that she had been given the test twice before and her doctor warned her not to let anyone give her that test again due to hypersensitivity concerns. Instead of acting in the interest of Rosemary's health he not only ignored her vocal objections, he threatened to throw her in the "SHU[3]" if she didn't allow this procedure. He then either *conveniently* failed to document the administration or removed it upon realizing it harmed Rosemary. Had Rosemary not been making calls to her children and chatting with her fellow inmates he would have succeeded in burying his wrongdoing. There are no records of the lot number, dosage, and antigen used.

It is completely inappropriate to force a patient to accept any injection if that patient loudly objects, and to subsequently destroy/omit records related to that event. Had he just listened to Rosemary he could have done an x-ray, like Lovejoy, which would have either never led to an underlying PE, or revealed an underlying issue.

Rosemary explicitly expressed her medical need to Nurse Etheridge in the form of not allowing a completely redundant, unnecessary, and harmful TST to be administered. With no regard to BOP policy as it relates to TB testing history or her medical records, he forced her to get the TST injection, by threat of SHU confinement.

Immediately after the March 8th 2018 encounter, Rosemary documented the incident and submitted a grievance/complaint report to the staff at FCI Aliceville detailing that she had been threatened to take the TST.

Nurse Etheridge came back, apologized and attempted to be friendly with her, but the damage was done. This means the medical staff inside Aliceville <u>knew</u>

---

[3] SHU refers to solitary confinement

5

**BIVENS CLAIM ATTACHMENT - ROSEMARY EWERE IRIELE**

of Rosemary's grievance/complaint report and buried it. This complaint has yet to be released to Rosemary's family; Fortunately, Rosemary recounted this event to her children over the phone so there is a record of it.

After the TST administration on March 8th 2018, Rosemary became gravely ill, which was uncharacteristic of her. This was so strange that Stanley, Rosemary's son, was taken aback by it when they spoke on the phone.

Up until March 8th 2018, Rosemary had been tested twice, but she had NEVER reacted to any other TST administration prior to the one administered by Nurse Etheridge (herein will be referenced as "Etheridge"). On a phone call with Robin, Rosemary's daughter, Rosemary detailed how as soon as she received the shot her entire body felt horrible. She felt itchy, dizzy, light headed, couldn't walk long distances, and started showing cold like symptoms.

On March 15th 2018, Rosemary reported that she was having an adverse reaction to the TST forced upon her by "Health Aide and Technician" Christopher P. Potter (herein will be referenced as "Potter"), yet Potter claims they don't exist and documents as much. Notably, Potter is not a registered Nurse in Alabama.

Potter's documentation of that encounter is contradicted by other inmates and Rosemary's calls with her children. During the phone calls between March 15th-19th of 2018 Rosemary described rashes, and even mentioned that she was told by Potter to get Hydrocortisone from the commissary, which she did. When Rosemary's belongings were mailed to her residence after she died, Hydrocortisone was among them. This indicates that Potter is simply not reporting what actually transpired.

As Rosemary's condition dramatically worsened between March 15th and March 19th, she kept going to "sick call" and asking to receive medical attention.

6

**BIVENS CLAIM ATTACHMENT - ROSEMARY EWERE IRIELE**

Richard Griffin (herein will be referenced as "Griffin") and Potter were well aware of Rosemary's suffering and serious medical need because when she was at the clinic Griffin and Potter belittled her, turned her away, refused to diagnose her or otherwise provide her with medical care. This is notable because according to the medical records there had been no medical evaluation to ascertain Rosemary's condition between March 15th through March 19th, yet the medical staff callously rejected her pleas to receive medical care.

Witnesses recounted that not only were her pleas for medical treatment denied, Griffin and Potter also accused her of faking sickness to get free medicine. Had they simply actually examined her they would have spotted her patently obvious pulmonary emboli symptoms that required medical attention and prevented her untimely demise. These symptoms were, but not limited to:

1. Acute Cough
2. Chest Pain
3. Tachycardia (Elevated resting heart rate: above 100)
4. Cyanosis (Blue/Gray appearance)
5. Dyspnea (Difficulty breathing)
6. Migraine with Aura (Headache with vision issues)
7. Skin rash
8. Lightheadedness /Dizziness
9. Unexplained drop in weight
10. Unexplained drop in blood pressure
11. Sudden blurry vision
12. No elevated temperature
13. EKG that shows signs of previous heart issues

Even discounting the symptoms reported by other Inmates and what Rosemary described on the phone, symptoms are present that the Merck manual warns as red flags. The following are of particular importance:

**7**

**BIVENS CLAIM ATTACHMENT - ROSEMARY EWERE IRIELE**

1. Unexplained drop in weight loss
2. Unexplained drop in blood pressure
3. Sudden blurry vision
4. No elevated temperature
5. EKG that shows previous heart issues

According to the Merck manual, all of these warrant medical attention. Based on witness testimony, letters, and what was observed in the medical files, Nurse Knopp took no action or took clearly inadequate, cursory action, so as to amount to no treatment, preventing her from receiving necessary and appropriate medical care. It is readily apparent that Nurse Knopp was only writing down symptoms that justified her getting out of actually providing Rosemary with the medical care she obviously needed.

Even a lay person can see that losing 9 lbs in 4 days is a problem, etc; so it is beyond belief that a healthcare provider somehow did not know this.

Nurse Knopp made absolutely no attempt to provide Rosemary with any such medical care despite being well aware of the risks. Knopp either knew, or should have known, of Rosemary's serious medical need. She deliberately chose to ignore Rosemary's patently obvious symptoms, intentionally declining to even provide her medication to suppress the symptoms, and leaving her to needlessly suffer. Rosemary had to turn to other inmates to get help in trying to ease the symptoms she was experiencing.

Rosemary became increasingly desperate and started reaching out to her children about how Aliceville was refusing to treat her or even supply her with medication to suppress the symptoms. It is unimaginably cruel to tell someone suffering in pain that they are "faking" their condition.

8

**BIVENS CLAIM ATTACHMENT - ROSEMARY EWERE IRIELE**

When Rosemary reported this to her children they raised their complaints with Aliceville via phone and the appellate Attorneys via email. This is when Rosemary began detailing everything that was happening inside Aliceville to them. Notably, Aliceville staff has failed to turn over a number of the calls that took place between March 15th and March 19th.

Prior to Rosemary's death, On March 18th 2018, Grant (her son) was communicating his concerns about Aliceville via email to the appellate Attorneys. He raised concerns about their refusal to treat her, and the efforts that he and his siblings were making.

On a phone call with Robin (her daughter) on March 18th 2018, she further details how she was coughing through the night and that for her that was extremely unnatural because as a Healthcare provider herself she had been exposed to all sorts of pathogens with no issue.

According to Lorri Jackson-Brown [69947-019], Rosemary was coming out of Medical. She was crying in pain—you could look at her and tell she was in pain. Rosemary said "they won't do anything to help me"

According to Kerstin Preis-Jones [76405-379],  Rosemary told her that her chest hurt and her head hurt. She died on a Wednesday. Tuesday they talked. Rosemary told her that medical "doesn't want to do anything to help me."

On the morning of March 21st 2018, Rosemary's condition got so undeniably severe that she could not lie down for fear of losing her breath altogether and her roommate, Leslie Furgeuora-Espinoza, pushed the alarm to call for help during this emergency.

A correctional officer came, Unnamed Officer 1, deactivated the alarm, observed Rosemary's serious medical need in that she was dying in front of him and said "she will be alright, she can go to sick call". The only thing this

9

**BIVENS CLAIM ATTACHMENT - ROSEMARY EWERE IRIELE**

"individual"[4] had to do was call the medical staff to help her and he deliberately refused to do that.

As dire as this situation was, at this time Rosemary could have still been saved with blood thinners, anticoagulants, and thrombolytics . In other words, this officer had a duty to ensure Rosemary's safety, observed a serious medical need, and somehow concluded that dying was not an emergency.

After this initial dismissal, Rosemary told her roommate to go to breakfast as there wasn't anything more she could do for her. Leslie instead went to go and find medication, but when she returned the situation got worse with Rosemary collapsing.

Leslie hit the emergency alarm again. The same, or a different, officer came and simply told Leslie to fill out paperwork and left after turning off the alarm. From Leslie's Letter: "That is when I pushed the alarm button [again] that the officer came with such disdain and told me to fill out a medical slip and get her to sick call".

Again, Rosemary's serious medical need was directly observed, and she was left to die by correctional officers inside Aliceville. Had it not been for these Officers' repeated callous derelictions of duty, and deliberate indifference to Rosemary's serious medical needs, she would be alive today.

Rosemary's condition continued to deteriorate again, and Leslie hit the alarm for the 3rd time before personnel showed up. It was then when officers showed up who gave this situation some attention. At this time 2 officers came and asked what was wrong. These officers, contrary to the previous bunch, tried to help Rosemary, but at this time she was unresponsive.

When medical showed up, <u>Potter</u>, who again is not a licenced nurse, ran over to Rosemary, threw her to the ground, and started performing CPR. The final act that took Rosemary's life was Potter's reckless actions. Had Potter simply investigated the situation, as any reasonable health care provider would have done, he would have known that CPR was the exact wrong thing to do. Potter is a trained

---

[4] The word 'individual' because It's difficult to describe the man who let Rosemary die as anything without descending into unprofessional verbage.

medical professional and should have been able to diagnose those situations and perform the necessary procedure.

Rosemary died in her cell according to 2 separate witnesses. This is in direct contrast to what Richard Griffin and other named and unnamed staff purported on Rosemary's final day. Notably missing from Aliceville's medical records are vitals, blood pressure, BPM or any instrumental measurements taken when Aliceville claimed to be performing procedures to save her life. All of this is documented in Leslie's Letter, and backed up by witness testimony.

When Rosemary died, all of Rosemary's children immediately provided a written record of their recollection of events relating to their Mother's health and treatment inside Aliceville while it was painfully fresh. This was all before they were informed of anything that had actually occurred.

What's important to know is that while they were making the calls, and writing these emails they had yet to receive any letters from inmates, cause of death report from Alabama, or independent autopsy report. No one can make the claim that they were practicing revisionist history regarding Rosemary's symptoms and their observations.

At the direction of Warden Patricia V. Bradley, unnamed investigators sequestered Leslie Furgeuora-Espinoza, Rosemary's cellmate and the inmate with the most first-hand knowledge of Rosemary's pain, suffering, emotional distress, and wrongful death. Leslie was sequestered and locked in a bathroom for several hours, where the investigators repeatedly attempted to coerce Leslie to say that Rosemary fell or injured herself and that this is how she died. It is only after Leslie's repeated refusal to be coerced, that the investigators actually inquired about the circumstances around Rosemary's death.

Of particular note is Elizabeth Etheridge's report on the day of Rosemary's death. It largely corroborates Leslie's written account of what happened.

### BIVENS CLAIM ATTACHMENT - ROSEMARY EWERE IRIELE

Multiple witnesses have suggested that camera footage be reviewed to corroborate everything that happened to Rosemary.  A spoliation letter sent to FCI Aliceville, shortly after Rosemary's death, regarding the preservation of evidence makes this possible.

In the medical report prepared by Richard Griffin he details attempts made to save Rosemary's life that run contrary to first-hand witness accounts. More curiously, this is the first time Rosemary's condition is accurately transcribed. Somehow, when Rosemary died, the medical staff noted that she "had chest pain, cyanosis", but reports that Rosemary is unconscious. Looking closer he also reports that she is not breathing. It's beyond ridiculous for Rosemary to actually be correctly examined only after her death, with the threat of external eyes looming. Defendant Griffin was aware of all relevant facts and made efforts to obfuscate the circumstances around Rosemary's death.

Rosemary's family believed the BOP, and whoever they used to conduct the autopsy, was going to try to protect themselves from the consequences of any wrongdoing; Rosemary's family opted to have an independent autopsy performed.

When the family asked for Rosemary's body to be sent to them so that an independent autopsy could be performed, they were informed that Rosemary would not be released to them for 2 MONTHS. The individual states on the phone that it was BOP policy (It wasn't).  They were never asked if they authorized the autopsy. Upon checking into the law, the only way this can occur is if the government is doing this to protect itself from civil liability.

As they had thought, in an attempt to obfuscate the circumstances around her death, the Defendants removed or did not document what they observed, removed phone calls between the March 15th 2018 and March 20th 2018, delayed turning over Rosemary and the results of the autopsy, left out the underlying cause of the pulmonary infarction, attempted to prevent her family from performing a quick/timely independent autopsy immediately after, and warned that they could not release Rosemary for 2 months.

**BIVENS CLAIM ATTACHMENT - ROSEMARY EWERE IRIELE**

After Rosemary's family applied pressure to retrieve her, even though the samples taken were not released for about another year, the state's autopsy report made no mention of Rosemary's underlying cause of death. It mentions a pulmonary infarction as the main cause, but the underlying cause was left blank. This is unheard of and inexcusable.

After having an independent autopsy performed, they were able to confirm that the underlying cause of death was a collection of small pulmonary emboli. According to the CDC this is both a preventable and treatable condition.

Aliceville's medical staff are directly responsible for Rosemary's death. To be clear: Rosemary did everything she could from her position. It is not the case that a set of individuals simply "overlooked" something, and the victim of their deliberate indifference kept silent. Rosemary repeatedly voiced her complaints, and carried symptoms so obvious that her fellow inmates mentioned them in letters and interviews. She also verbalized many of her afflictions and concerns in recorded phone calls to her children. When the situation got worse, the correctional officers were called via the emergency alarm, and were deliberately indifferent to her medical needs. Not once, but twice.  To make matters worse the Defendants made attempts to cover up their wrongdoing.

In refusing to evaluate or respond to Rosemary's grievances regarding medical care, all Defendants acted jointly and in concert with each other. Each Defendant had the duty and the opportunity to protect Rosemary, to obtain necessary medical treatment for Rosemary's in a timely manner, and to refrain from belittling Mrs. Iriele and dismissing her pain, suffering, and emotional distress. Each defendant, instead, failed and refused to perform such duty, thereby proximately causing Rosemary's extreme pain and suffering and emotional distress and eventual death.

**BIVENS CLAIM ATTACHMENT - ROSEMARY EWERE IRIELE**

## Deliberate Indifference to Serious Medical Needs and Wrongful Death

All references in the fact section should be incorporated here as well.

These Defendants, despite the knowledge each had of Mrs. Iriele's serious medical needs, the need for immediate serious medical treatment, and the foreseeable consequences of not adequately treating these serious medical needs, took no action or took clearly inadequate, cursory action, so as to amount to no treatment, prevented her from receiving necessary and appropriate treatment and care, and were so grossly incompetent and inadequate as to shock the conscience. The medical defendants were not investigating, by testing or otherwise, the causes of significant deteriorations of inmate health or symptoms that obviously indicate potentially life-threatening conditions. They were deliberately indifferent to Rosemary's medical needs on numerous occasions. The only complete examination done on Rosemary was after her death.

The correctional officers were acutely aware of Rosemary's medical needs because they literally walked over to her after Leslie hit the alarm to see her dying only to shut off the alarm and say "she will be alright. She can go to medical".

Throughout this entire process the only thing Rosemary required was blood thinners, anticoagulants, and thrombolytics to save her life. Had the medical staff actually examined her, they clearly would have seen this. But Rosemary died on their watch. When they knew their wrongdoing would be exposed the defendants made efforts to hide records, and obfuscate the circumstances around Rosemary's death. Had it not been for Rosemary making every attempt to inform everyone around her of medical needs they would have gotten away with it. She called her children, she told her fellow inmates, and her cellmate; so it is beyond belief that lay people like Rosemary's children and fellow inmates were aware of her serious medical need and Aliceville staff was not.  Aliceville tried, unsuccessfully, to bury

14

**BIVENS CLAIM ATTACHMENT - ROSEMARY EWERE IRIELE**

their wrongdoing - they are now being legally held to account for the ridiculous deliberate indifference shown to Rosemary.