

FILED
2020 Nov-19  PM 10:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | |
|---|---|
| **GRANT SUNNY IRIELE, as** ) | |
| **Administrator of the Estate of** ) | |
| **ROSEMARY EWERE IRIELE (aka** ) | |
| **ROSEMARY OFUME)** ) | **Civil Action No. 7:20-cv-00383-LSC** |
| ) | |
| **Plaintiff,** ) | **JURY TRIAL DEMANDED** |
| **v.** ) | |
| ) | |
| **UNITED STATES OF AMERICA;** ) | |
| **WARDEN PATRICIA BRADLEY,** ) | |
| **individually; and OFFICER JONES,** ) | |
| **individually; RICHARD CARROLL** ) | |
| **GRIFFIN, individually; ELIZABETH A.** ) | |
| **KNOPP, individually; CHRISTOPHER** ) | |
| **P. POTTER, individually; and JASON S.** ) | |
| **ETHERIDGE, individually.** ) | |
| ) | |
| **Defendants.** ) | |

## AMENDED COMPLAINT

### NATURE OF THE CASE

1.     This is a civil action in which Plaintiff, by and through his attorneys, brings claims based on the Eighth Amendment to the United States Constitution, pursuant to the legal standards set forth in <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) and its progeny. Plaintiff also brings claims pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq.

2.     Plaintiff's decedent, Rosemary Iriele ("Iriele"), while an inmate in the custody of the Federal Bureau of Prisons ("BOP"), was treated with deliberate indifference as to her serious medical needs which proximately resulted in death.

3.     Plaintiff brings this suit to recover for the actions and inactions of the BOP, who failed in their duty to properly care for Iriele during her confinement at FCI Aliceville.

4.      As a federal inmate, Plaintiff was committed to the Government's care, custody, and control - her options for proper medical care were limited to what FCI Aliceville allowed. Inmates at FCI Aliceville rely on employees of the BOP, and especially the Warden, to ensure their serious medical needs are properly addressed so as not to result in the constitutional violation(s) of deliberate indifference to serious medical needs.

5.      As a result of the deliberate indifference to her serious medical condition, Iriele suffered an agonizing death on the floor of a jail cell while her cell-mate frantically tried to summon help to save Iriele's life.

### JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this matter pursuant to U.S.C. §§ 1331 & 1346 (b)(1) as the claims in this case are brought against the United States of America under the Federal Tort Claims Act (FTCA), 28 U.S.C. 2671, et seq. and against the individual Defendants under the Eighth Amendment to the United States Constitution, pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

7.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1402(b), as some or all the events upon which this action is based occurred in the Northern District of Alabama.

8.      Plaintiff has exhausted all federal tort claim administrative remedies, including submitting an administrative complaint to the Federal Bureau of Prisons' Southeast Regional Office. Plaintiff received an FTCA claim denial letter dated May, 19, 2020. As such, Plaintiff's claims have been denied and the administrative remedies have been exhausted.

### PARTIES

9.      Plaintiff, Grant Iriele, is the son of the decedent, Rosemary Iriele. Plaintiff is over the

age of nineteen (19) years and a citizen of the United States residing in New York, USA.  Letters of Administration have been issued by the DeKalb County Probate Court which appointed Plaintiff as Administrator and legal representative of the Estate of Rosemary Iriele.  As such, Plaintiff is directly authorized under Ala. Code § 6-5-410 to prosecute the decedent's claims in this lawsuit.  Further, Plaintiff, as Administrator of the Estate, has standing to bring claims for compensatory and other relief under 42 U.S.C. § 1983 and 42 U.S.C. §1988.

10.     The United States of America is a sovereign entity named herein pursuant to the FTCA. Defendant United States of America oversees the Federal Bureau of Prisons "Bureau" or "BOP", which is responsible for the custody and care of federal inmates.

11.     Defendant Patricia Bradley was, at all times relevant to this complaint, a BOP employee. Defendant Bradley ("Warden Bradley" or "Bradley") was Warden of FCI Aliceville, in which capacity she had full administrative responsibility for the entire institution. As Warden, Defendant Bradley had overall responsibility for facility-wide adherence to policies concerning medical care, including emergency medical care, by FCI Aliceville agents, employees and contractors to the inmates. As Warden, Bradley was responsible for compliance with BOP, FPC and PREA2-mandated standards. She was also responsible for supervising, training, and disciplining prison employees and agents. Warden Bradley is named in her individual capacity.

12.     Defendant Officer Jones, at all times relevant to this complaint, was employed by the BOP at FCI Aliceville, in which capacity he served as corrections officer.

13.     Defendant Richard Carroll Griffin, at all times relevant to this complaint, was employed by the BOP at FCI Aliceville, in which capacity he served as a medical officer.

14.     Defendant Elizabeth Knopp, at all times relevant to this complaint, was employed by

3

the BOP at FCI Aliceville, in which capacity she served as nurse.

15.     Defendant Christopher Potter, at all times relevant to this complaint, was employed by the BOP at FCI Aliceville, in which capacity he served as a health aid and technician.

16.     Defendant Jason Etheridge, at all times relevant to this complaint, was employed by the BOP at FCI Aliceville, in which capacity he served as nurse.

17.     All defendants above were, at all times relevant to this complaint, acting under color of United States law.

## FACTS

18.     On or near August 20, 2017, Plaintiff's decedent, Rosemary Iriele ("Iriele"), went through intake at FCI Aliceville.

19.     On or near August 24, 2017, Iriele was given a Tuberculin Skin Test ("TST") at FCI Aliceville. Iriele had recently been given a TST on July 21, 2017, while she was at Robert A. Deyton Detention Facility (hereinafter "Lovejoy"), for which she tested positive.

20.     On information and belief, a Nurse Nikki, RN, of FCI Aliceville, evaluated Iriele's results of the TST and determined it to be negative. However, Nurse Nikki's evaluation and reading was done three (3) days after the cutoff time to properly evaluate results.

21.     The TST only tests whether an individual has ever been exposed to Tuberculosis ("TB"), it does not confirm whether someone actually has the infection.  It is quite rare to receive a negative result after a positive result; especially after the positive test was determined only a month prior.

22.     Iriele was born outside of the United States and had received the Bacillus Calmette–Guérin ("BCG") vaccine for TB as a child.  Because Iriele had just received a positive

4

result the previous month, she should have been subject to the 2-step test to eliminate or greatly reduce the potential of an inaccurate reading. However, Nurse Nikki failed to conduct the 2-step test or any additional testing on Iriele.

23.     In September, 2017, Iriele was transferred out of Aliceville and back to Lovejoy. When she arrived back at Lovejoy, Iriele was given a chest x-ray for TB that came up as negative.

24.     On or near March 7, 2018, Iriele was sent back to Aliceville.

25.     On March 8th 2018, Nurse Jason Scott Etheridge attempted to give yet another TST to Iriele. Iriele vocally objected to being administered the test on the grounds that she had been given the test twice before and her doctor specifically warned her to not let anyone give her that test again due to hypersensitivity concerns.

26.     Instead of acting in the interest of Iriele's health, Etheridge not only ignored her vocal objections, but he also threatened to throw her in solitary confinement ("SHU") as punishment if she did not allow the TST procedure. Etheridge then failed to document the administration of the test or removed it from her medical file upon realizing it may have harmed Iriele because there are no records of the lot number, dosage, or antigen used. Had Etheridge listened to Iriele and properly reviewed her medical history, he could have easily done an x-ray, like Lovejoy did in September, 2017.

27.     Iriele explicitly expressed her medical concerns to Nurse Etheridge in the form of protesting a redundant, unnecessary, and potentially harmful TST to be administered. With no regard to BOP policy as it relates to TB testing history or her medical records, Etheridge forced Iriele to get the TST injection, by threat of SHU confinement.

28.     Immediately after the March 8, 2018 testing by Etheridge, Iriele documented the

5

incident and submitted a grievance/complaint to the staff at FCI Aliceville detailing that she had been forced to take the TST or face solitary confinement.

29.     Soon after filing the complaint, Nurse Etheridge came to Iriele's cell, apologized and attempted to be friendly with her. Etheridge's actions demonstrated the fact that FCI Aliceville, including its medical staff, were aware of Iriele's grievance/complaint. Further, Iriele recounted this event to her children by phone.

30.     After the TST administration on March 8, 2018, Iriele became gravely ill, which was uncharacteristic of her. This was so strange that Iriele's son, was taken aback by it when the two spoke on the phone. Leading up to March 8, 2018, Iriele had been tested twice, but she had never reacted to any other TST administration prior to the one administered by Nurse Etheridge.

31.     On a phone call with her daughter, Iriele detailed how as soon as she received the shot her entire body felt horrible. She felt itchy, dizzy, light headed, couldn't walk long distances, and began showing cold like symptoms.

32.     On March 15, 2018, Iriele complained that she was having some form of adverse reaction to the TST forced upon her by Etheridge. FCI Aliceville's "Health Aide and Technician" Christopher P. Potter ("Potter"), evaluated Iriele based on her claims and made the determination that there were no signs of any adverse reaction. Notably, Potter is not a registered Nurse in Alabama.

33.     Potter's determination that Iriele was not experiencing an adverse reaction is contradicted by other inmates and Iriele's calls with her children. Indeed, during the phone calls between March 15-19, 2018, Iriele described rashes and even stated that she was told by Potter to get Hydrocortisone from the commissary, which she did.

34.     As her condition dramatically worsened between March 15 and March 19, Iriele kept

6

going to "sick call" and asking to receive medical attention.

35.     Richard Griffin ("Griffin"), medical doctor and medical officer for FCI Aliceville, and Potter, were well aware of Iriele's suffering and serious medical need. When Iriele was at the FCI Aliceville infirmary, Griffin and Potter belittled her, turned her away, and refused to diagnose her or otherwise provide her with medical care.

36.     Indeed, according to Iriele's medical records there was no medical evaluation to ascertain her condition between March 15 and March 19, but the medical staff callously and continually rejected her pleas to receive medical care.

37.     Witnesses recounted that not only were her pleas for medical treatment denied, Griffin and Potter also accused her of faking illness in an effort to get free medicine. However, had someone actually examined Iriele, they would have easily spotted her obvious pulmonary emboli ("PE") symptoms that required medical attention.  A simple evaluation would have prevented Iriele's untimely demise. The symptoms Iriele was experiencing included, but not limited to, the following:

- Acute Cough
- Chest Pain
- Tachycardia (Elevated resting heart rate: above 100)
- Cyanosis (Blue/Gray appearance)
- Dyspnea (Difficulty breathing)
- Migraine with Aura (Headache with vision issues)
- Skin rash
- Lightheadedness /Dizziness
- Unexplained drop in weight
- Unexplained drop in blood pressure
- Sudden blurry vision
- No elevated temperature
- EKG that shows signs of previous heart issues

38.     Even discounting the symptoms reported by other Inmates and what Iriele was able to convey to her children over the phone, symptoms were still present that the Merck manual

warned as red flags. The following are of particular importance:

- •  Unexplained drop in weight loss
- •  Unexplained drop in blood pressure
- •  Sudden blurry vision
- •  No elevated temperature
- •  EKG that shows previous heart issues

According to the Merck manual, all of the above symptoms warranted immediate medical attention. However, based on witness testimony, letters, and Iriele's medical files, Nurse Knopp took no action or took clearly inadequate, cursory action, so as to amount to no treatment, preventing Iriele from receiving necessary and appropriate medical care. It is apparent that Nurse Knopp was merely recording symptoms that allowed her to deny the serious medical care Iriele obviously needed.

39.     In fact, Iriele lost 9 lbs in 4 days. It is bewildering that Knopp did not notate such dramatic weight loss as a problem and perform further tests and evaluation. Even a lay person would know something is wrong if someone complaining of sickness loses that much weight in such a short period of time. However, Knopp failed to take additional action and Iriele was not given further treatment or testing.

40.     Nurse Knopp made absolutely no attempt to provide Iriele with any such medical care despite being well aware of the risks. Knopp either knew, or should have known, of Iriele's serious medical need. Knopp deliberately chose to ignore Iriele's patently obvious symptoms, intentionally declined to even provide Iriele medication to suppress the symptoms, and left her to needlessly suffer. Sadly, Iriele was forced to turn to other inmates to get help in trying to ease the pain from the symptoms she was experiencing.

8

41.     Iriele became increasingly desperate and started reaching out to her children about how Aliceville was refusing to treat her or even supply her with medication to suppress the symptoms. Iriele also made her children aware that Aliceville staff told her she was "faking" her condition.

42.     When Iriele reported what she was experiencing to her children, they immediately made complaints with Aliceville via phone and also to Iriele's criminal appellate attorneys.

43.     On a phone call with her daughter on March 18, 2018, Iriele further detailed how she had been coughing throughout the night. Iriele was gravely concerned because as a healthcare provider herself she had been exposed to all sorts of pathogens in the past but had never experienced any issue.

44.     In the days leading to her death, according to a witness, Lorri Jackson-Brown [69947-019], Iriele was coming out of the medical unit. Iriele was crying in pain—you could look at her and tell she was in pain. Iriele said to Jackson-Brown "they won't do anything to help me".

45.     According to Kerstin Preis-Jones [76405-379], Iriele told her that her chest hurt and her head hurt on Tuesday. Iriele died the next day on a Wednesday. On the Tuesday they talked, Iriele told Preis-Jones that medical "doesn't want to do anything to help me."

46.     On the morning of March 21, 2018, Iriele's condition got so undeniably severe that she could not lie down because she was having severe difficulty breathing and feared completely losing her breath altogether and dying as a result. Iriele's roommate, Leslie Furgeuora-Espinoza, who was also a trained medical professional, pushed the emergency alarm to call for help.

9

47.     A correctional officer, Officer Jones, responded to the call. Jones deactivated the alarm, observed Iriele's obvious and serious medical condition - she was literally dying in front of him - and then made his own medical determination about Iriele by stating "she will be alright" and that "she can go to sick call". Jones did not call medical staff or alert anyone that there was a medical emergency taking place.

48.     As dire as this situation was, at the time Officer Jones observed Iriele, there was a high probability that she could have still been saved with blood thinners, anticoagulants, and thrombolytics. Jones had a duty to Iriele as it related to her safety; he observed a serious medical need but unilaterally concluded that there was no emergency and, as a result, did nothing to further raise the alarm of Iriele's obvious and rapidly deteriorating condition.

49.     After Jones dismissed the emergent condition, Iriele had all but given up hope. She was able to tell her roommate to just go to breakfast and leave her there because there was nothing more she could do for her. Leslie instead went to go and find medication and anyone else that may be able to help.  However, by the time she returned to Iriele the situation had gotten much worse and Iriele was collapsed on the floor.

50.     Leslie hit the emergency alarm again. The same officer came and angrily told Leslie, in a most flippant manner, to fill out paperwork for Iriele and then take her to sick call. Officer Jones failed to raise any emergency alert/alarm to notify medical staff that an emergency was taking place nor did he do anything to help get Iriele to the medical unit. Rather, he simply turned off the emergency alarm for the second time and left Iriele as she lay writhing in pain.

10

51.     Again, Iriele's serious medical need was directly observed, but she was left to die by correctional officers inside Aliceville. Had it not been for the repeated, callous derelictions of duty, and deliberate indifference to Iriele's serious medical needs, she would be alive today.

52.     Iriele's condition continued to deteriorate, and Leslie hit the emergency alarm for a 3rd time. This time two different officers came and asked what was wrong. These officers acknowledged it was an emergency situation and tried to help Iriele. However, Iriele was largely unresponsive.

53.     When medical staff finally arrived to Iriele's cell, Potter started performing CPR. Had Potter simply investigated the situation, as any reasonable health care provider would have done, he would have known that CPR was the exact wrong thing to do in such a situation. Potter failed to properly diagnose the situation and perform the correct procedure.

54.     Iriele died in her cell according to two (2) separate witnesses. Notably missing from Aliceville's medical records are vitals, blood pressure, BPM or any instrumental measurements taken when Aliceville claimed to be performing procedures to save her life.

55.     At the direction of Warden Patricia V. Bradley, unnamed investigators sequestered Leslie Furgeuora-Espinoza, Iriele's cellmate and the inmate with the most first-hand knowledge of Iriele's pain, suffering, emotional distress, and wrongful death. Leslie was sequestered and locked in a bathroom for several hours, where the investigators repeatedly attempted to coerce Leslie to say that Iriele fell or injured herself and that that was how she died. It was only after Leslie's repeated refusal to be coerced, that the investigators actually inquired about the circumstances around Iriele's death.

56.     Multiple witnesses stated that security camera footage be reviewed to corroborate everything that happened to Iriele. A spoliation letter was sent to FCI Aliceville, shortly after Iriele's death regarding the preservation of evidence.

57.     Iriele's family believed the BOP, and whoever they used to conduct the autopsy, was going to try to protect themselves from the consequences of any wrongdoing. As such, Iriele's family opted to have an independent autopsy performed.

58.     When the family asked for Iriele's body to be sent to them so that an independent autopsy could be performed, they were informed that Iriele would not be released to them for two (2) months. The family was told that such a time frame was BOP policy.

59.     Sadly, in what can only be described as an attempt to obfuscate the circumstances around her death, Defendants removed or did not document what they observed in the days leading up to and including the day of Iriele's death; removed records of phone calls between March 15th and March 20th of 2018; delayed turning over Iriele's body and the results of their autopsy; left out the underlying cause of the pulmonary infarction; and prevented her family from performing a quick/timely independent autopsy after death.

60.     The state's autopsy report made no mention of Iriele's underlying cause of death. It mentions a pulmonary infarction but the underlying cause was left blank.

61.     After having an independent autopsy performed, Iriele's family were able to confirm that the underlying cause of death was a collection of small pulmonary emboli. According to the CDC this is both a preventable and easily treatable condition.

62.     FCI Aliceville's staff are directly responsible for Iriele's death. To be clear: Iriele did everything she could do for herself given the circumstances. This is not a case where a set

of individuals simply "overlooked" something, and the victim kept silent. Rather, Iriele repeatedly voiced her complaints and exhibited symptoms so obvious that a lay person would understand she was experiencing an emergency medical condition. Iriele also verbalized many of her afflictions and concerns in recorded phone calls to her children.

63.     On the day of her death, when the situation was dire, the correctional officers were called via the emergency alarm but were deliberately indifferent to Iriele's serious medical needs. Not once, but twice.

64.     Each Defendant had the duty and the opportunity to protect or help Iriele, to obtain necessary medical treatment for her in a timely manner, and to refrain from belittling Iriele and dismissing her pain, suffering, and emotional distress. Each Defendant, instead, failed or refused to perform their duty owed to Iriele - thereby, proximately causing Iriele's extreme pain and suffering, emotional distress, and eventual death.

**COUNT I**
**Eighth Amendment: Deliberate Indifference as to Medical Needs**
**(against All Individual Defendants)**

65.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 18-64 above.

66.     The Defendants, despite the knowledge each had of Iriele's serious medical needs, and the need for immediate serious medical treatment, and the foreseeable consequences of not adequately treating these serious medical needs, took no action or took clearly inadequate, cursory action so as to amount to no treatment, prevented her from receiving necessary and appropriate treatment and care, and were so grossly incompetent and inadequate as to shock the conscience.

67.     The medical defendants were not investigating, by testing or otherwise, the causes of significant deteriorations of inmate health or symptoms that obviously indicate potentially life-threatening conditions. They were deliberately indifferent to Iriele's serious medical needs on numerous occasions. The only complete examination done on Iriele was after her death.

68.     The correctional officers were acutely aware of Iriele's medical needs because they literally walked over to her after her cellmate hit the alarm.  The COs witnessed Iriele dying but only acted to shut off the alarm and casually say "she will be alright"and "she can go to medical".

69.     Throughout this entire process the only thing Iriele required was blood thinners, anticoagulants, and thrombolytics to save her life. Had the medical staff actually examined her as is their duty, Iriele would very likely still be alive today. However, Iriele died a preventable death on Defendants' watch.

70.     When Defendants knew their wrongdoing and deliberate indifference woud be brought to light, the Defendants made conscious efforts to hide records, and obfuscate the circumstances around Iriele's death.

71.     But for Iriele making every effort to inform everyone around her of her medical needs, Defendants would have likely been able to cover up their wrongs. However, Iriele called her children, she told her fellow inmates, and her cellmate.

72.     Deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment.

73.     Iriele had – as do all inmates in the custody of the BOP have - a clearly established right under the Eighth Amendment to the United States Constitution not to be subjected to cruel and unusual punishment while incarcerated.

14

74.     Deliberate Indifference to a serious medical need is not a legitimate form of punishment, it is not an ancillary component of any prison sentence, and it serves no legitimate purpose.

75.     Defendants violated Iriele's rights by repeatedly and deliberately failing to get her proper medical treatment.  Indeed, in the days leading to her death, Iriele went to sick call every single day.  She complained of the real and critical pain, and other symptoms she was experiencing.  However, every day she sought help, she was turned away.  It was so bad that Iriele complained to anyone that would listen that the Defendants were refusing to help her.

76.     Defendants failed in their duty to provide Iriele with constitutionally safe and secure conditions of confinement by subjecting her deliberate indifference of her serious medical needs.

77.     Iriele in the days leading to her death, and her cellmate on the day of her death, repeatedly requested emergency medical attention but their requests were deliberately ignored.

78.     The Defendants had subjective knowledge of the substantial risk of serious harm to Iriele if she did not receive medical treatment.   However, the Defendants responded with deliberate indifference to that risk and denied Iriele medical treatment that could have saved her life.


79.     Defendants' conduct, or lack of response, constituted more than gross negligence, but was reckless and deliberately indifferent to Iriele's serious medical needs.

80.     Defendant Patricia Bradley, as supervisors of the prison and its employees, failed to ensure that inmates received adequate and prompt medical care by, including but not limited to the following: failing to create and implement sufficient policies and procedures regarding the provision of medical care to inmates, failing to ensure adequate and sufficient training regarding medical care

15

for inmates, failing to provide proper supervision and discipline of jailers, and failing to ensure sufficient staffing to prevent deliberate indifference to the medical needs of inmates. These failures constitute a deliberate and reckless disregard of the medical needs of Iriele and the violation of her constitutional rights ultimately resulting in her death.

81.     The Defendants' wrongful conduct resulted from a custom or policy of refusing or delaying medical treatment to inmates at FCI Aliceville.

82.     The individual Defendants are not entitled to any form of immunity because they were not performing a legitimate job-related function through means that were within their power to utilize.  The individual Defendants did not have discretion to deny an inmate necessary medical care that would have saved her life.

83.     At the time of this incident, it was clearly established that deliberate indifference to serious medical needs of an inmate is a violation of the Eighth Amendment. As such, the individual Defendants are not entitled to immunity.

84.     As a direct and proximate result of Defendants' deliberate indifference, Iriele was subjected to unnecessary and wanton pain, and emotional and physical injury that resulted in death.

**COUNT II**
**Eighth Amendment: Failure to Train and Supervise**
**(against Warden Bradley and Richard Griffin)**

85.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 18-64 above.

86.     On information and belief, Warden Bradley and Griffin knew or should have known that inmates, including Iriele, were having their serious medical needs treated with deliberate indifference.

16

87.     Bradley and Griffin promulgated customs or policies of inadequate training and supervision that demonstrated deliberate indifference to and led to the constitutional violations that proximately caused the death of Iriele.

88.     Bradley and Griffin knew of a need to adequately train and/or supervise their staff, including corrections officers and medical staff, as it relates to inmates' health and potential medical emergencies, but made a deliberate choice not to do so.

89.     Bradley and Griffin were deliberately indifferent and even complicit in the risk faced by Iriele by failing to take such steps as could be reasonably expected to address the basic medical training needed to recognize serious and obvious medical needs.

90.     The inaction and failures of Bradley and Griffin, as well as the other agents who were responsible for the custody, care, safety, and medical treatment of Iriele was a direct and proximate cause of the violation of her rights under the United States Constitution.

91.     The acts, omissions, policies, and practices of Warden Bradley and Griffin constituted a knowing violation of Iriele's clearly established constitutional rights.

92.     The policies, practices, acts, and omissions of Warden Bradley and Griffin directly and proximately caused the violation of Iriele's constitutional right to adequate medical care while incarcerated.

93.     Warden Bradley and Griffin directly and proximately caused the violation of Iriele's rights under the Eighth Amendment of the United States Constitution by failing to train, supervise, and discipline FCI Aliceville staff and employees and/or report known or suspected failures as it relates to inmate's medical needs, thereby failing to adequately prevent further constitutional violations.

## COUNT III
### Eighth Amendment: Failure to Discipline
### (against Warden Bradley)

94.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 18-64, above.

95.     Defendant Bradley had knowledge of her staff being deliberately indifferent to inmates' serious medical needs.  Bradley failed to discipline, properly train or supervise the responsible agents.

96.     As a proximate result of Defendant's failure to discipline staff, medical staff and corrections officers, including Jones, continued to be deliberately indifferent to inmate's serious medical needs. The continual injuries, including death, of inmates as the result of Bradley's failure to discipline amounted to a deliberate indifference to the health and safety of inmates, such as Iriele.

97.     Defendant Bradley's custom or policy of failing to discipline her staff was a proximate cause of the death of Iriele whose serious medical needs were ignored continually  over a prolonged period of time while incarcerated at Aliceville.

98.     The deliberate indifference by Bradley to the conduct of her staff, which includes repeated failures to follow guidelines, cruel and unusual punishment, including deliberate indifference to serious medical needs, led to the violation of Iriele's constitutionally protected rights. The failure of Iriele to take corrective action or to discipline after learning of instances of deliberate indifference, and the failure to properly train staff, led to these violations.

## COUNT IV
### Eighth Amendment: Failure to Protect
### (against Warden Bradley)

18

99.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 18-64, above.

100.     Defendant Bradley had knowledge of her staff, including corrections officers and medical staff, being deliberately indifferent to inmates' serious medical needs during the time Iriele was incarcerated. Bradley failed to protect inmates, including Iriele, from deliberate indifference of serious medical needs at the hands of her corrections officers and medical staff.

101.     As a proximate result of Bradley's failure to protect, corrections officers and medical staff, were continually deliberately indifferent to the serious medical needs of inmates. Bradley's failure to protect amounted to a deliberate indifference to the health and safety of inmates, such as Iriele.

102.     Defendant Bradley's custom or policy of failing to protect the inmates in FCI Aliceville was a proximate cause of the deliberate indifference to serious medical needs experienced by Iriele who was callously ignored and humiliated in the days leading to her death.

103.     The deliberate indifference by Bradley to the conduct of Cos and medical staff, which includes repeated failures to follow guidelines, and cruel and unusual punishment, led to the violation of Iriele's constitutionally protected rights. The failure of Bradley to take corrective action or to discipline after learning of instances of misconduct, and the failure to properly train the Cos and medical staff, led to these violations.

**COUNT V**
**Federal Tort Claims Act: Negligence**
**(against United States of America)**

104.     Plaintiff realleges and incorporates paragraphs 18-64.

105.    "To establish negligence, the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury. Lemley v. Wilson, 178 So. 3d 834, 841 (Ala. 2015).

106.    Defendant the United States of America is responsible for the oversight of its employees, which includes officers and staff at federal correctional institutions, including FCI Aliceville.

107.    Pursuant to the Federal Tort Claims Act, the United States is liable for damages caused by the negligent or wrongful acts of its employees acting within the scope of their employment, under circumstances where the United States, if a private person, would be liable in accordance with the laws of the State of Alabama.

108.    Federal law specifically requires the BOP to "provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States" and to "provide for the protection ... of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2)-(3).

109.    Defendant United States and the supervisors and employees of FCI Aliceville have a duty to provide inmates with a safe and secure environment, free of dangers, including the dangers of deliberate indifference to serious medical needs.

110.    As a premises owner/operator, the United States has a duty to provide inmates with a reasonably safe place with staff that are adequate in number and properly trained so as not be deliberately indifferent to inmates' serious medical needs.

111.    Correctional officers and medical staff have a duty to safeguard inmates from the deliberate indifference to serious medical needs caused by other correctional officers and medical staff.

112.    Correctional officers and medical staff have a duty to protect inmates from known and obvious dangers, including those posed by serious medical needs.

113.    FCI Aliceville and its agents were deliberately indifferent to the serious medical needs of Iriele since her initial intake.

114.    Then, between March 8, 2018 to the day of her death on March 21, 2018, Defendant repeatedly demonstrated a callous indifference to the serious medical needs of Iriele. Indeed, Iriele continually pleaded for medical assistance but to no avail.  On the day of her death, the emergency alarm button had to be hit three times before any staff took Iriele's obviously emergent condition seriously.  But, by then it was too late.

115.    Based on the facts as stated in paragraphs 18-64, above, Defendant USA is liable for the negligence that resulted in Iriele's death while an inmate at FCI Aliceville.

116.    As a direct result of the prison officials' breach of their non-discretionary duties or their reckless, willful, wanton and careless disregard of the obvious and known risk to inmates in improperly performing them, Iriele needlessly suffered physically and mentally until she died.

**COUNT VI**
**Federal Tort Claims Act: Wrongful Death**
**(against United States of America)**

117.    Plaintiff realleges and incorporates paragraphs 18-64 and 106-114, above.

118.    Defendant had a duty to provide medical care to Iriele but deliberately and intentionally failed to do so causing her death on or about the 21st day of March, 2018.

119.    As a result of the failure to provide medical treatment, Iriele suffered grievous and horrific pain, cried out in agony and died a preventable death.

120.    Here, Defendant United States owed a duty to Iriele.  As a premises owner/operator, the United States had a duty to provide inmates with a reasonably safe place, which specifically includes a place where serious medical needs would not be treated with deliberate indifference.

121.    Defendant USA breached its duty when Iriele was not provided proper medical care despite her clear signs of medical distress.

122.    FCI Aliceville and its agents allowed the deliberate indifference of Iriele's serious medical needs to go on for almost two weeks from March 8, 2018 to her death on March 21, 2018. As such, Defendant USA is liable for the acts described herein.

123.    As a direct result of the Defendant USA's agents' breach of their non-discretionary duties or their reckless, willful, wanton and careless disregard of the obvious and known risk to inmates in improperly performing them, Iriele suffered physical and mental injury that resulted in her untimely death.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Honorable Court grant her the following relief:

1. Compensatory damages as to all Counts;

2. Punitive damages as to Counts I-IV above;

3. Attorneys' fees and costs; and,

4. Such other further relief as this Court deems just.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON**

**ALL ISSUES TRIABLE BY JURY**

Respectfully submitted,

/s/ Sidney Jackson
Samuel Fisher
Sidney M. Jackson
*Attorneys for the Plaintiff*
**WIGGINS, CHILDS, PANTAZIS, FISHER & GOLDFARB, LLC**
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500
sjackson@wigginschilds.com
sfisher@wigginschilds.com

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed a copy of the foregoing with the Clerk of Court using the CM/ECF system which provides electronic notice of filing to all counsel of record.

This the 23rd day of October, 2020.

/s/ Sidney Jackson
OF COUNSEL

**Notice of Lawsuit as it relates to Defendant USA and Request for Waiver of Service to Be Sent by Certified Mail to the Following:**

Federal Bureau of Prisons
Department of Justice
FCI Aliceville