FILED
2026 Sep-01 PM 04:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **GRANT SUNNY IRIELE,** *as the personal representative of the estate of Rosemary Ewere Iriele,* | ] | |
| **Plaintiff,** | ] | |
| **v.** | ] | **Case No. 7:20-cv-383-ACA** |
| **RICHARD CARROLL GRIFFIN, et al.,** | ] | |
| **Defendants.** | ] | |

**MEMORANDUM OPINION**

When Rosemary Ofume[1] was transferred to Federal Correctional Institute Aliceville, her intake medical examination revealed that she had tachycardia and high blood pressure. Over the course of two weeks, Ms. Ofume had three more medical evaluations conducted by Defendants Nurse Elizabeth Knopp and Paramedic Christopher Potter. Each evaluation documented Ms. Ofume's continued tachycardia and hypertension. Defendant Dr. Richard Carroll Griffin, the clinical director of FCI Aliceville, reviewed those evaluations and approved the prescribed course of action. Ms. Ofume's health noticeably declined.

[1] Ms. Ofume was also known as Rosemary Iriele. Because both parties use Ms. Ofume in their summary judgment briefing, the court follows suit.

On the morning of March 21, 2017, Ms. Ofume complained of intense pain and could not lie down for fear of losing her breath. Her roommate pulled the medical emergency alarm, and corrections officer Defendant Drew Patterson responded. Ms. Ofume became unresponsive, and Officer Patterson called an emergency medical response. Paramedic Potter responded and performed chest compressions, but he was unable to revive Ms. Ofume, who was pronounced dead later that day due to a pulmonary infarction.

Plaintiff Grant Sunny Iriele—the personal representative of Ms. Ofume's estate—sued Dr. Griffin, Nurse Knopp, Paramedic Potter, and Officer Patterson under the Eighth Amendment for deliberate indifference to Ms. Ofume's serious medical needs. (Doc. 100 ¶¶ 66–130). Defendants move for summary judgment on all claims. (Doc. 136). Because the claims arise in a new *Bivens* context, the court **WILL GRANT** the motion for summary judgment in favor of the defendants and against Mr. Iriele and **WILL ENTER SUMMARY JUDGMENT** in their favor.

Defendants also moved to exclude nearly all Mr. Iriele's summary judgment evidence. (Doc. 154). Because that evidence goes to the merits of Mr. Iriele's claims and is not relevant to the court's analysis, the court **WILL DENY** the motion as **MOOT**.

Finally, Mr. Iriele moves for sanctions, up to and including an adverse inference, based on the Bureau of Prisons' ("BOP") failure to preserve electronically

stored evidence. (Doc. 157). Because no sanction would alter whether the claims arise in a new context, the court **WILL DENY** the motion as **MOOT**.

## I. BACKGROUND

In deciding a motion for summary judgment, the court must "view the evidence and all factual inferences therefrom in the light most favorable to [the estate], and to resolve all reasonable doubts about the facts in [its] favor." *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1341 (11th Cir. 2022) (quotation marks omitted; alterations accepted). Where the parties have presented evidence creating a dispute of fact, the court's description of the facts adopts the version most favorable to the non-movant. *See id.*; *see also Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020) ("The 'facts' at the summary judgment stage are not necessarily the true, historical facts; they may not be what a jury at trial would, or will, determine to be the facts.").

At all relevant times, Dr. Griffin served as the clinical director at FCI Aliceville. (Doc. 137-2 at 5). Under BOP policy, Dr. Griffin reviewed and approved every clinical encounter conducted by a midlevel practitioner or nurse. (*Id.* at 14). As part of this duty, he was required to tell subordinates if a patient's circumstances required further action because he was the only person permitted to make diagnoses beyond minor illnesses. (*See id.* at 9, 14).

In August 2017, Ms. Ofume's had an intake exam. (Doc. 137-7). The exam records show that Ms. Ofume had a heart rate of 110 beats per minute ("bpm") and high blood pressure. (*Id.* at 5).[2] One week later, Ms. Ofume had another medical exam, sustaining a heart rate of 102 bpm and high blood pressure. (Doc. 137-8 at 2). On September 13, Ms. Ofume had her first examination with Dr. Griffin. (Docs. 137-9, 137-10). She had a heart rate of 119 bpm and hypertension. (Doc. 137-9 at 5, 11). He ordered an EKG and chest x-ray. (*Id.* at 13; *see* doc. 137-10 at 2). Two weeks later, Ms. Ofume was transferred from FCI Aliceville. (*See* doc. 137-12 at 2).

Ms. Ofume returned to FCI Aliceville on March 7, 2018 and received another health screening. (*See* doc. 137-2 at 15; doc. 137-15 at 4). She had a heart rate of 105 bpm. (Doc. 137-15 at 4). Over the next twelve days, Ms. Ofume visited health services several times for different reasons. (Doc. 137-3 at 14–15; doc. 137-19; doc. 137-20 at 2; doc. 144-9 at 0:38). Ms. Ofume's heart rate was elevated on both of the two occasions it was examined. (Doc. 137-3 at 14–15 (noting it was elevated); doc. 137-20 at 2 (104bpm)).

On March 19, 2018, Ms. Ofume again went to health services with a "cough, runny nose, stuffy nose, and temperature." (Doc. 137-22 at 2). Nurse Knopp examined her and noted that Ms. Ofume's heart rate was 113 bpm and that Ms. Ofume now weighed 164 pounds—down from 173 pounds from four days

[2] A heart rate over 100 bpm is considered tachycardia. (Doc. 137-2 at 15).

earlier. (*Compare id.*, *with* doc. 137-20 at 2). Ms. Ofume's condition continued to decline. (Doc. 144-4 ¶ 8).

Two days later, Ms. Ofume's roommate pressed the emergency alarm in their room because Ms. Ofume complained of "pain all over." (Doc. 144-16 at 3; doc. 137-2 at 24). An officer deactivated the alarm and told Ms. Ofume to go to sick call at 8:00 a.m. (Doc. 144-16 at 3). An hour later, Ms. Ofume was "bleeding, gagging, and choking . . . on her own blood, . . . struggling to breath, moaning and groaning, and unable to communicate." (*Id.* ¶ 12). An inmate triggered the alarm in Ms. Ofume's room again. (*Id.* ¶ 13). Officer Patterson responded to the alarm. (Doc. 137-5 at 34). Ms. Ofume then collapsed, and Officer Patterson called a medical emergency. (*Id.*; doc. 137-27 at 2). Paramedic Potter responded and began performing chest compressions. (Doc. 137-2 at 23; doc. 144-16 at 3). Ultimately, additional paramedics arrived and transported Ms. Ofume to a local hospital, where she was pronounced dead. (Doc. 137-27 at 2). The autopsy report lists pulmonary infarction as Ms. Ofume's cause of death. (Doc. 137-28 at 2).

BOP maintains an administrative remedy program that allows inmates to "seek review" of "an issue" relating to her confinement. (Doc. 137-33).

## II. DISCUSSION

In deciding a motion for summary judgment, the court must determine whether, accepting the evidence in the light most favorable to the non-moving party,

the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]here is a genuine issue of material fact if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Looney v. Moore*, 886 F.3d 1058, 1062 (11th Cir. 2018) (quotation marks omitted).

Defendants assert two arguments for summary judgment: (1) Mr. Iriele's claims arise in a new context of *Bivens*, and (2) they are entitled to qualified immunity. (Doc. 139 at 19–38). Because the court concludes that Mr. Iriele's claims arise in a new *Bivens* context, the court does not consider whether the defendants are entitled to qualified immunity.

Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, a plaintiff has an implied cause of action for money damages against a federal employee for constitutional violations in certain circumstances. 403 U.S. 388, 392 (1971). But these circumstances are limited, and the Supreme Court "has over and over again refused to extend *Bivens* to any new context or category of defendants." *Johnson v. Terry*, 119 F.4th 840, 847 (11th Cir. 2024) (quotation marks omitted). The Supreme Court has recognized three contexts for *Bivens* claims, and the parties agree only one is relevant here: the Eighth Amendment deliberate indifference to a serious medical need established in *Carlson v. Green*, 446 U.S. 14 (1980). *See id.*; (doc. 139 at 20–25; doc. 149 at 19–23).

"[D]etermining whether a new *Bivens* claim can be recognized involves a two-step analysis." *Johnson*, 119 F.4th at 851. The court must first determine whether the case presents a new *Bivens* claim, one that is "meaningfully different from the three cases in which the Court has implied a damages action." *Robinson v. Sauls*, 102 F.4th 1337, 1342 (11th Cir. 2024) (quotation marks omitted). And if the case presents a new context, the court must consider whether "special factors counsel hesitation before recognizing a cause of action in this context." *Id.* at 1344.

At the first step, Defendants argue that this case presents a new context from *Carlson* because BOP adopted an administrative remedy program. (Doc. 139 at 20–29). Mr. Iriele counters that the administrative remedy program bars claims only for living inmates because the estate cannot "meaningfully invoke or complete any administrative process." (Doc. 149 at 20–33). The Eleventh Circuit's recent decision in *Carrin v. Strong*, No. 25-11330, -- F.4th --, 2026 WL 2122909 (11th Cir. July 23, 2026) forecloses Mr. Iriele's arguments.

In *Carrin*, the plaintiff asserted deliberate indifference claims after federal officials failed to provide an inmate with required medicine, leading to his death. *Id.* at *2–3. Rejecting plaintiff's argument that the Estate lacked access to the administrative remedy, the court held that "the presence of *any* alternative remedy, regardless of effectiveness, means the context of these claims is different from the context of the claim in *Carlson*." *Id.* at *7 (quotation marks omitted). The court then

determined that the administrative remedy program served as a special factor that counseled against expanding *Bivens*. 2026 WL 2122909 at *8.

Here, BOP maintains an administrative remedy program that allows inmates to "seek review" of "an issue" relating to her confinement. (Doc. 137-33). So this case presents a new context different from *Carlson*. 2026 WL 2122909 at *7. And although Mr. Iriele argues that administrative remedy program cannot be a special factor against extending *Bivens* because it is not available to the estate, that argument was rejected in *Carrin*. (Doc. 149 at 33); 2026 WL 2122909 at *8. Accordingly, Mr. Iriele's *Bivens* claims fail.

To avoid this conclusion, Mr. Iriele argues that exhaustion of administrative remedies is an affirmative defense that Defendants waived. (Doc. 149 at 31). But the defendants seek summary judgment because the existence of the administrative remedy program makes Mr. Iriele's claims a new *Bivens* context—not because Mr. Iriele failed to comply with the administrative remedy program's requirements. (Doc. 136 at 4). The court therefore **WILL GRANT** Defendants' motion.

Both Mr. Iriele's motion for spoliation sanctions and the defendants' motion to strike pieces of evidence go to whether the defendants acted deliberately indifferent. Because those facts are not relevant to the court's analysis, the court **WILL DENY** them both **AS MOOT**. (Docs. 154, 157).

## III. CONCLUSION

The court **WILL GRANT** the motion for summary judgment in favor of Defendants and against the estate and **WILL ENTER SUMMARY JUDGMENT** in Defendants' favor. (Doc. 136). The court **WILL DENY** the motion for sanctions (doc. 157) and the motion to exclude evidence (doc. 154) as **MOOT**. The court will enter a separate final order consistent with this memorandum opinion.

**DONE** and **ORDERED** this September 1, 2026.

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE